Sabina MUHAMMED, Appellant

v.

The STATE of Texas, Appellee.

No. 14–09–00290–CR.

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 11, 2011.

Winston E. Cochran, Jr., Houston, TX, for Appellant.

Michelle R. Townsend, Houston, TX, for the State.

Panel consists of Justices ANDERSON, FROST, and BROWN.

## OPINION

JOHN S. ANDERSON, Justice.

Appellant, Sabina Muhammed, appeals her conviction of the offense of breach of computer security. *See* Tex. Penal Code Ann. § 33.02 (West 2003). The trial court assessed appellant's punishment at 180 days' confinement in the Harris County Jail, probated for two years. On appeal, appellant brings four issues challenging her conviction. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellant and the complainant, Heber Saravia, an engineering student, both attended the University of Houston ("UH"). At the end of the spring 2004 semester, Saravia received an email in one of his UH accounts from an unknown Yahoo account, which contained his social security number. This was the beginning of a series of incidents involving Saravia's UH account. These included one incident in the fall of 2004, when Saravia discovered that someone had hacked into his UH account, changed his password, and had deleted all of his engineering work stored there. The incidents began to escalate in 2006 when Saravia started receiving emails inquiring about his personal life. One of these provided a hint as to who the sender might be: the email mentioned "their name started with an 'S.'" Another incident involved Saravia receiving a notice from the UH College of Business indicating he had

requested to change his major. Saravia testified this was not correct as he was "in the middle of [his] engineering degree" and was passing all of his classes.

In addition to incidents involving his UH account, Saravia testified he noticed appellant waiting for him outside his classrooms, observing him at the Metro bus stop, and following him around the UH campus. Saravia also testified that appellant sent him a "friend request" on Facebook. In addition, Saravia testified that transcripts of other UH students were mailed to his home address. During the spring of 2007, the UH Police Department notified Saravia that someone had been using his e-mail address to conduct fraudulent activities. Saravia testified he never granted appellant permission to access his UH account or any of the information contained therein.

David Canales, a UH alumnus, also testified at appellant's trial. Canales testified that he had encountered problems with his UH account similar to those experienced by Saravia. Canales also testified that he had witnessed appellant following him around the UH campus as well. After Canales reported to the UH Police Department that someone had hacked into his UH account and made changes, Officer Russell Lyman of the UH Police Department began investigating.

The UH information technology ("IT") department provided Officer Lyman with IP addresses that were used to access UH students' information.[1] Most of these IP addresses were located at UH, however one was located at Lone Star College ("LSC").[2] Officer Lyman then looked for

1. Officer Lyman testified that an IP address tells you the name and location of a computer.

2. Lone Star College was formerly known as North Harris Montgomery Community College. Some of the trial testimony referred to the school as "North Harris College."

a connection between the two schools. He discovered that appellant, a UH student, worked at LSC as a tutor and had access to the computers located on the LSC campus. Officer Lyman requested that the LSC police monitor appellant's computer use.

During trial, the State called Officer Pervaiz Parker, an LSC police officer, to the stand. Officer Parker testified that he knew appellant only worked at LSC on Saturdays. He then testified that on Saturday, February 24, 2007, he spotted appellant in the LSC computer lab. Officer Parker walked behind appellant while she was using one of the computers in the LSC computer lab. Officer Parker noticed that appellant was accessing the UH website. Officer Parker also saw the name "Vargas" on appellant's computer screen. Officer Parker testified that he had been notified that Vargas was one of the six names associated with UH accounts that had been improperly accessed.

At that point, Officer Parker contacted an information technician at the LSC IT department, Wesley Parker. Officer Parker asked Mr. Parker to remotely monitor appellant's computer. Mr. Parker proceeded to remotely access appellant's computer and determined she was on the UH website. Mr. Parker, and later his supervisor Celeste Burkards, captured images of the computer screens as appellant accessed various UH student accounts for approximately forty minutes. During this time period, appellant accessed Saravia's student account as well as the accounts of other UH students. After appellant finished browsing, she deleted her browsing history and cookies. The images of appellant's activities that had been captured by Mr. Parker and Ms. Burkards were printed, turned over to Officer Lyman, and admitted into evidence during appellant's trial.

During trial, appellant took the stand and insisted that mismanagement of the UH computer accounts was responsible for the breach of security on Saravia's UH account. Appellant maintained she did not know Saravia and had never noticed him on the UH campus. Appellant further testified that she was always either in class, at work, or at home studying, and therefore could not have been in the same places as Saravia. Appellant testified to this effect even though Saravia had not testified as to specific dates and times when he had seen appellant following him. When asked about the State's screen captures, appellant did not recall seeing any of the screen images and implied that the images had been fabricated as they appeared "copied and pasted."

Following the close of the evidence, the jury found appellant guilty of the misdemeanor offense of breach of computer security. The trial court assessed appellant's punishment at confinement for 180 days in the Harris County Jail plus a fine, but placed appellant on community supervision for two years.

Appellant filed a motion for new trial. During the hearing, appellant called Uche Okafor to testify with regard to the authenticity of the State's screen shots. Mr. Okafor testified that he is the founder of Iseek4 Computer Consulting, an IT support company, which provides small businesses with an "IT platform." Mr. Okafor also testified that his company deals with networking, database management, computer surveillance, software management, and other similar activities. He also testified that he had discovered discrepancies in the State's screen shots. For instance, Mr. Okafor noted that several of the State's exhibits simultaneously displayed the alleged hacking from appellant's remotely-accessed computer with the computer clock showing the date and time.

Mr. Okafor opined that when an individual accesses a remotely-accessed computer, such as the one used by appellant, it is impossible for that person to "pull up the clock from the computer to show the time and date." Mr. Okafor also insisted the UH system had "very good security policies" where it was "impossible ... that a student can access the [UH] e-mail account without being the actual student or knowing the user credentials."

Appellant argued Mr. Okafor's testimony during the hearing constituted "new evidence." However, the trial judge pointed out that appellant could have subpoenaed Mr. Okafor to testify at trial and, therefore, Mr. Okafor's testimony was not "newly-discovered evidence." The trial court then denied appellant's motion for new trial. This appeal followed.

### DISCUSSION

Appellant raises four issues on appeal: (1) the evidence is insufficient to establish appellant knew she was acting without Saravia's consent when she accessed his UH computer account; (2) if section 33.02 of the Texas Penal Code does not require that appellant knew she lacked consent, the statute is unconstitutional under the overbreadth doctrine; (3) the trial court erred in "defining proof beyond a reasonable doubt as a decision based on 'common sense;'" and (4) the trial court erred by denying the motion for new trial.

### I. Is the evidence sufficient to support appellant's conviction?

In her first issue, appellant contends the evidence adduced at trial by the State was insufficient to support her conviction. We disagree.

### A. The standard of review.

Even though appellant does not specify in her first issue whether she is challenging the legal or factual sufficiency of the evidence, appellant cites the *Jackson v. Virginia* standard of review and in her prayer appellant asks this court to reverse her conviction and order a judgment of acquittal. Accordingly, we construe this as a challenge to the legal sufficiency of the evidence. *See Jackson v. Virginia*, 443 U.S. 307, 311–12, 99 S.Ct. 2781, 2785, 61 L.Ed.2d 560 (1979) (appellant raised legal sufficiency claim); *Flores v. State*, 139 S.W.3d 61, 64 (Tex.App.-Texarkana 2004, pet. ref'd) ("If the evidence is legally insufficient, the appropriate remedy is to reverse the conviction and render a judgment of acquittal."); *Rischer v. State*, 85 S.W.3d 839, 842–43 (Tex.App.-Waco 2002, no pet.) (court analyzed appellant's claim under legal sufficiency standard because appellant requested a reversal and acquittal even though he did not specify whether he was challenging a legal or factual sufficiency); *Gutierrez v. State*, 71 S.W.3d 372, 376 (Tex.App.-Amarillo 2001, pet. ref'd).

■ Making this distinction has recently become less significant because a majority of the judges of the Texas Court of Criminal Appeals has determined that "the *Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 894 (Tex.Crim.App.2010) (plurality op.).[3] Therefore, regardless of whether a criminal defendant challenges

---

3. Nonetheless, this does not alter the constitutional authority of the intermediate courts of appeal to evaluate and rule on questions of fact. *See* TEX. CONST. art. V, § 6(a) ("[T]he decision of [courts of appeal] shall be conclusive on all questions of fact brought before them on appeal or error.")

the legal or factual sufficiency of the evidence, the standard of review is the same.

In a sufficiency review, we view all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789; *Salinas v. State*, 163 S.W.3d 734, 737 (Tex.Crim.App.2005). The jury, as the sole judge of the credibility of the witnesses, is free to believe or disbelieve all or part of a witness' testimony. *Jones v. State*, 984 S.W.2d 254, 257 (Tex.Crim.App.1998). The jury may reasonably infer facts from the evidence presented, credit the testimony of the witnesses it chooses to believe, disbelieve any or all of the evidence or testimony proffered, and weigh the evidence as it sees fit. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim.App.1986). Reconciliation of conflicts in the evidence is within the jury's discretion, and such conflicts alone will not call for reversal if there is enough credible evidence to support a conviction. *Losada v. State*, 721 S.W.2d 305, 309 (Tex.Crim.App.1986). An appellate court may not re-evaluate the weight and credibility of the evidence produced at trial and in so doing substitute its judgment for that of the fact finder. *King v. State*, 29 S.W.3d 556, 562 (Tex.Crim.App.2000). Inconsistencies in the evidence are resolved in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex.Crim.App.2000). We do not engage in a second evaluation of the weight and credibility of the evidence, but only ensure the jury reached a rational decision. *Muniz v. State*, 851 S.W.2d 238, 246

(Tex.Crim.App.1993); *Harris v. State*, 164 S.W.3d 775, 784 (Tex.App.-Houston [14th Dist.] 2005, pet. ref'd).

### B. Analysis

Appellant was charged with the offense of breach of computer security. *See* Tex. Penal Code Ann. § 33.02 (West 2003). A person commits this offense "if the person knowingly accesses a computer, computer network, or computer system without the effective consent of the owner." Tex. Penal Code Ann. § 33.02(a). In her first issue, appellant begins with the assertion that, to convict her of the charged offense, the State was required to prove that she not only knowingly accessed Saravia's UH computer account, but also that she did so knowing that Saravia had not given effective consent for this action.[4] She then argues that the evidence was insufficient to prove either element of the offense. In response, the State agrees with appellant that the knowledge requirement applies to both the access and the consent elements of the offense, but nonetheless asserts the evidence is sufficient. The parties have not cited and research has not revealed any cases on this issue. We hold that, to obtain a conviction under this statute, the State must prove that the defendant knowingly accessed a computer, computer network, or computer system, knowing that this act was without the effective consent of the owner.

We measure the sufficiency of the evidence against a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App.1997). Under a hypothetically correct jury charge the

---

4. The jury charge tracked the language of the statute; it asked the jury:

 Therefore, if you believe from the evidence beyond a reasonable doubt that in Harris County, Texas, SABINA MUHAMMED, hereafter styled the Defendant, heretofore on or about February 24, 2007, did then and there unlawfully, knowingly access a computer system without the effective consent of the owner, namely HEBER ISSAC SARAVIA, hereinafter called the Complainant, then you will find the Defendant guilty.

State was required to prove that (1) appellant, (2) on or about February 24, 2007, (3) in Harris County, Texas, (4) knowingly accessed Saravia's computer account or computer network, and (5) she did so knowing her access was without Saravia's consent. *See* Tex. Penal Code Ann. §§ 6.03(b); 33.01(*l* ),(4)-(6), (8); 33.02(a). Under the statute, "access" means "... to approach, instruct, communicate with, store data in, retrieve or intercept data from, alter data or computer software in, or otherwise make use of any resource of a computer, computer network, computer program, or computer system." *Id.* § 33.01(1).

 A jury may infer knowledge or intent from the acts, conduct, and remarks of the accused, and from the surrounding circumstances. *Hernandez v. State,* 819 S.W.2d 806, 810 (Tex.Crim.App.1991) *overruled on other grounds by Fuller v. State,* 829 S.W.2d 191 (Tex.Crim.App.1992). Direct evidence of the elements of the offense is not required. *Hooper v. State,* 214 S.W.3d 9, 14 (Tex.Crim.App.2007). Indeed, proof of a culpable mental state almost invariably depends upon circumstantial evidence. *Martin v. State,* 246 S.W.3d 246, 263 (Tex.App.-Houston [14th Dist.] 2007, no pet.). Juries are permitted to make multiple reasonable inferences from the evidence presented at trial, and circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. *Hooper,* 214 S.W.3d at 14–16. Circumstantial evidence alone can be sufficient to establish guilt. *Id.* at 15.

We conclude there is ample evidence in the record establishing that appellant knowingly accessed Saravia's UH computer account without his consent. Officer Parker testified that on February 24, 2007, he observed appellant sitting at a computer in the LSC computer lab. Officer Parker walked by appellant's computer and noticed the UH website logo on the screen of the computer being used by appellant. Officer Parker testified he asked Mr. Parker to check the specific computer appellant used. Mr. Parker testified that he was able to identify appellant's specific computer due to the computers' numbering system, which consisted of a "big white sticker on top of the computers with the names on them." Furthermore, Burkards testified she observed appellant browsing through Saravia's email account in real-time. Such testimony supports the jury's verdict. Therefore, we hold there is sufficient evidence to establish appellant illegally accessed Saravia's UH computer account.

 Appellant further contends there is insufficient evidence in the record proving that she knew Saravia had not given his consent for her to access his UH computer account. We conclude there is sufficient evidence in the record to support the jury's verdict. During trial, Saravia testified he never gave appellant permission to access his UH account nor consented for appellant to use his password. Saravia also testified he did not personally know appellant, but he had noticed her following him around the UH campus and knew that she had requested his friendship on Facebook. Saravia further testified that the sender of the emails he received indicated that his or her name started with an "S." Saravia's testimony supports the jury's verdict. A reasonable jury could choose to believe the testimony and documents in support of the State's argument. Thus, viewing the evidence in the light most favorable to the jury's verdict, we conclude there is sufficient evidence upon which a rational trier of fact could have found Saravia did not give appellant consent to access his UH computer account and that appellant unlawfully accessed that account

knowing she did not have consent to do so. We overrule appellant's first issue.

## II. Appellant's second issue need not be addressed.

In her second issue, appellant contends that if the statute under which she was prosecuted does not require the actor have knowledge that her action is without the consent of the victim, the statute is unconstitutionally overbroad. Specifically, appellant argues if the knowledge requirement is not applied to the consent element, this would result in "strict liability for opening an e-mail addressed to the actor, or otherwise opening up computer data without knowledge that the actor was not supposed to receive the data." Because we have decided the knowledge requirement applies to both the access and consent elements of the offense, we need not address this issue. Tex.R.App. P. 47.1.

## III. Did the trial court err when it discussed "beyond a reasonable doubt" during voir dire?

In her third issue, appellant alleges the trial court erred when it gave the venire the following explanation of reasonable doubt during voir dire:

[t]he burden of proof in this case is going to be beyond a reasonable doubt. It's not beyond all doubt or beyond a shadow of a doubt. It's not 100 percent. Nobody could make that burden unless you were a witness yourself, perhaps, to an event. And if that were the case, you wouldn't be sitting here in the jury room. You would be back in the witness room waiting to testify, So, the law does not require that you be convinced 100 percent; but you must be convinced beyond a reasonable doubt. There's no legal definition. You will use your common sense to conclude whether or not you've been convinced beyond a reasonable doubt at the end of the trial.

Appellant did not object to the trial court's explanation. The State asserts appellant did not preserve error because she did not object to the trial court's comment.

As a general rule, a defendant must make a timely and specific objection to preserve error for appellate review. Tex. R.App. P. 33.1(a). Appellant acknowledges the general rule, but asserts it does not apply to her third issue by citing to *Blue v. State.* 41 S.W.3d 129 (Tex.Crim. App.2000) (plurality op.). In *Blue,* the trial court apologized to the venire panel for its long wait and then explained that the delay occurred because the defendant was indecisive on whether to accept a plea bargain. *Id.* at 130. The trial court then expressed its preference that the defendant had pled guilty. *Id.* A plurality of the Texas Court of Criminal Appeals held the trial court's comments during voir dire "tainted [the defendant's] presumption of innocence in front of the venire, were fundamental error of constitutional dimension and required no objection." *Id.* at 132. Appellant argues we should hold that the trial court's "beyond a reasonable doubt" explanation impinges on the presumption of innocence in the same manner as the trial court's comments in *Blue* and therefore constitutes fundamental error not requiring an objection to preserve error. We disagree.

*Blue* is a plurality opinion, which is not binding precedent and therefore we are not obligated to follow it. *Powell v. State,* 252 S.W.3d 742, 745 (Tex.App.-Houston [14th Dist.] 2008, no pet.). Even if *Blue* were binding, the trial court's comments in this case were not of such a nature that the presumption of innocence was tainted. Therefore, by failing to object to the trial court's explanation of "beyond a reasonable doubt," appellant failed to preserve

the argument for appellate review. Appellant's third issue is overruled.

## IV. Did the trial court abuse its discretion when it denied appellant's motion for new trial based on newly discovered evidence?

In her fourth issue, appellant contends the trial court abused its discretion by denying her motion for new trial based on allegedly newly discovered evidence she presented in her motion and at the hearing on her motion for new trial. In response, the State asserts appellant waived her fourth issue because she failed to adequately brief her contentions as required by Rule 38.1(i) of the Rules of Appellate Procedure. We agree.

An appellant's brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and the record. Tex.R.App. P. 38.1(i). This requirement is not satisfied by merely uttering brief, conclusory statements unsupported by legal citations. *See King v. State,* 17 S.W.3d 7, 23 (Tex. App.-Houston [14th Dist.] 2000, pet. ref'd). Appellant's briefing on her fourth issue provides no citations to the record or legal authority supporting her position; therefore, it falls short of the minimum required to present an issue for appellate review. *Id.* Because appellant inadequately briefed this issue, she has waived error. *Id.* We overrule appellant's fourth and final issue.

### Conclusion

Having overruled all of appellant's issues necessary for the final disposition of this appeal, we affirm the trial court's judgment.